IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHIRLEY ALEXANDER, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CASE NO. CV 01-B-3262-NE |
| } | |
| SOUTHERN ENERGY HOMES, } | |
| INC., } | **ENTERED** |
| } | |
| Defendant. } | SEP 26 2003 |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by the defendant, Southern Energy Homes, Inc. In her Complaint, plaintiff Shirley Alexander alleges defendant retaliated against her, in violation of Title VII of the Civil Rights Act of 1991 when she was the only employee in her department "laid-off." Plaintiff contends that defendant retaliated against her in violation of Title VII due to her previous sexual harassment lawsuit which was settled. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

### I.   Factual Summary

Defendant operates several manufactured housing plants in Alabama, including one located in Addison, Alabama, as part of defendant's Lifestyle Division. (Mem. in Supp. of Def.'s Mot. for Summ. J. at 1; Doc. 17, Ex. 1 at 65.) The plant in Addison, Alabama, the Lifestyle I plant, manufactured single-wide manufactured homes. (Doc. 17, Ex. 1 at 65.) The Lifestyle I plant has ten departments, and each department is responsible for adding a different component to the



manufactured home. (*Id.* at 66-68, 92-93.) Worker efficiency and productivity are critical to the plant's efficient operation; if a home was delayed in one department, it affected the entire production line. (Doc. 17, Ex. 3 at 53-54.) Employees in the Final Finish Department, which is Department Ten, were responsible for final touch-ups to the home before shipment to the customer. (Mem. in Supp. of Def.'s Mot. for Summ. J. at 2; Doc. 17, Ex. 2 at 103-05.)

Plaintiff worked for defendant at the Lifestyle I plant from August 10, 1988 until her lay-off on November 29, 2000. (Doc. 17, Ex. 2 at 103.) Plaintiff began working as a Molder in Department Nine, where she worked until she was injured in 1994. (Doc. 17, Ex. 2 at 103; Ex. 1 at 77, 275.) After her injury, defendant transferred plaintiff to Department Ten because of her medical restrictions. (Doc. 17, Ex. 1 at 75-79, 275-76.) In Department Ten, plaintiff and her co-worker, Margaret Abbott, were responsible for the final wipe-down or "shine work" on new homes. (Doc. 17, Ex. 1 at 119-20; Ex. 2 at 104.) Plaintiff's medical restrictions were eventually lifted, but she did not inform defendant. (Doc. 17, Ex. 1 at 77-78, 274; Doc. 22, Ex.1 at 44, 453.) The only two departments in which plaintiff worked were Molding and Final Finishing. (Doc. 17, Ex. 2 at 101-02.)

On May 5, 1999, plaintiff filed a lawsuit alleging she had been sexually harassed by her former supervisor, Tommy Hamby. (Doc. 17, Ex. 1 at 154; Ex. 1, ex. 1.) Defendant and plaintiff settled the claims on May 25, 2000, for $9,750, and the case was dismissed in June 2000. (Doc. 17, Ex. 1 at 154-55, 157; Doc. 1 ¶ 10; Doc. 17, Ex. 1, ex. 2.)

A steady decline in the mobile home industry over the last ten years led to several plant closings, including a plant in defendant's "Energy Division" in September 1999, and another in its "Lifestyle Division" in November 2000, which is at issue in this case. (Doc. 17, Ex. 1 at 185-87;

Ex. 11 ¶¶ 2, 3.) Phillip Green, the Production Manager over both plants, was informed of the decision to close the Lifestyle II plant, and consolidate its workforce with the workforce of the Lifestyle I plant, the day before the layoff was announced. (Doc. 17, Ex. 3 at 62, 144.) Green was required to choose the best and most critical employees for the new workforce, because the workforce would have to operate at a higher capacity, producing more homes with fewer workers. (Doc. 17, Ex. 3 at 67, 79-80; Ex. 11 ¶ 4.) Green was forced to staff each department with the fewest employees necessary to efficiently perform the required tasks. (Doc. 17, Ex. 11 ¶ 5.) Green retained employees who could perform multiple tasks within their departments to ensure flexibility and minimize the impact of employee absences. (Doc. 17, Ex. 3 at 103.) Thus, Green considered each employee's skills in determining which workers to retain, and which workers to eliminate, in order to minimize the impact of the plant closing on productivity. (Doc. 17, Ex. 11 ¶ 5.)

When assessing his needs in the Final Finish Department, Green determined he needed one full-time "Final Cleaner," and another worker who could perform those duties and assist with other functions in the department. (Doc. 17, Ex. 11 ¶ 6.) In deciding which employees to retain, Green considered job performance (which included experience and the skills necessary to perform various jobs), work record, and attendance. (Doc. 17, Ex. 3 at 93, 142-43.)

Green determined that Doris Ponder, a worker at the Lifestyle II plant, was critical to the consolidation because she had performed Final Cleaner duties, as well as a variety of other jobs. (Doc. 17, Ex. 9 at 27; Ex. 3 at 103-04; Ex. 11 ¶ 7.)[1] Ponder was skilled in several areas, had an

---

[1] The only position plaintiff was qualified for at the time of her layoff was Final Cleaner. Plaintiff contends that she was able to perform other duties such as molding, hanging drapes, etc. at the time of her layoff. However, six years prior to her layoff, plaintiff informed Southern Energy she was physically unable to perform any jobs other than Final Cleaner. Plaintiff was eventually cleared by her doctors to perform molding duties, but she never informed Southern Energy, nor did she attempt to perform any duties other than her Final Cleaner duties.

impressive work ethic and reputation for service, and had proven herself by going above and beyond what was required of her at work during her 14 years of service. (Doc. 17, Ex. 11 ¶ 7.) In fact, on several occasions Ponder took drapes home to be sewn or washed because she was not satisfied with their quality. (Doc. 17, Ex. 9 at 42-43.) On three occasions, Ponder received an award for Most Outstanding Employee, which was voted on by plant employees and was presented by Green. (Doc. 17, Ex. 9 at 44-45, 47-48, 50.) Green's perception of Ponder as an outstanding employee is evidenced by the fact that (before the lay-off) he offered Ponder a promotion to Group Leader in her department, which she declined. (Doc. 17, Ex. 9 at 50-51, 53; Ex. 3 at 143.) In addition, Ponder was dependable as evidenced by the fact that she had only one absence per year for an annual checkup. (Doc. 17, Ex. 11 ¶ 7, Ex. A; Ex. 3 at 111.) Therefore, Ponder was Green's "clear candidate for one of the two 'final clean' positions," and was selected to occupy the position, and to perform other functions in Department Ten. (Doc. 17, Ex. 11 ¶ 7.)

As for the remaining "Final Clean" position, Green chose between Margaret Abbott and plaintiff. (Doc. 17, Ex. 11 ¶ 8.) Neither Abbot nor plaintiff were experienced or skilled at performing other tasks. (Doc. 17, Ex. 1 at 127-28, 130, 147-48, 153-54; Ex. 4 at 41; Ex. 3 at 104.) Green chose Abbott because he believed her work performance and her dependability were superior to plaintiff's work performance and dependability. (Doc. 17, Ex. 11 ¶ 8.) Abbott had missed fewer days than plaintiff and she had a reputation for being dependable. (Doc. 17, Ex. 11 ¶ 8.) Green also felt Abbott was a quicker, more efficient worker than plaintiff. (Doc. 17, Ex. 3 at 114.) Plaintiff's attendance and performance were not unsatisfactory, but they were not as good as Abbott's attendance and performance. (Doc.17, Ex. 3 at 113-15.)

Green created a staffing plan for the newly consolidated plant, retaining some employees and laying off others. (Doc. 17, Ex. 11 ¶ 9.) Green and Aubrey Moore, the Assistant Production Manager, then met with each Department Supervisor to review the departmental changes. (Doc. 17, Ex. 11 ¶ 9.) In meetings held the day the layoff was announced, Green asked each Department Supervisor for their objections, if any, to his layoff decisions before he made the decisions final. (Doc. 17, Ex. 11 ¶ 9, Ex. 3 at 118-19.) For Department Ten, Green met with Moore and Danny Evans, the Supervisor of Department Ten. (Doc. 17, Ex. 11 ¶ 10.) The meeting only lasted a few minutes. (Doc. 17, Ex. 3 at 119-20; Ex. 8 at 35-36; Ex. 6 at 55, 58.) At that time, Green provided background on the employees who would be brought over from Lifestyle II, and informed Evans and Moore that Ponder would replace plaintiff and plaintiff would be terminated. (Doc. 17, Ex. 3 at 118-20, 145-47; Ex. 6 at 57-58.) Green asked Moore and Evans whether they had any objections or "any problem" with his personnel changes, and neither party objected. (Doc. 17, Ex. 3 at 119-20, 147; Ex. 8 at 35-36; Ex. 6 at 55.) Green did not discuss plaintiff's prior lawsuit during this meeting. (Doc. 17, Ex. 6 at 57, 75-76; Doc. 17, Ex. 3 at 146-47; Ex. 8 at 32.)

Plaintiff filed the instant action on December 17, 2001. (Doc. 1.) Following her layoff, plaintiff collected unemployment benefits for six months and then began working for Cavalier Mobile Homes. (Doc. 17, Ex. 1 at 44.) Plaintiff testified she has no desire to return to work for defendant, and she is not seeking reinstatement in this instant action. (Doc. 17, Ex. 1 at 227-28.)

II.     **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

III.    **Discussion**

"In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Plaintiff contends that

she has sufficient direct and circumstantial evidence to prove defendant terminated her in retaliation for engaging in protected activity.

### A. Direct Evidence

Plaintiff claims that two statements made by Danny Evans constitute direct evidence of discrimination. In the first statement, made in 1998, Evans allegedly told plaintiff, "they are fixing – trying to get rid of you." (Doc. 17, Ex. 1 at 174.) The second statement was allegedly made by Evans to Milton Swafford in October or November of 2000. (Doc. 17, Ex. 10 at 44, 50, 61.) At that time, Evans allegedly told Swafford "they were laying off [plaintiff] because they were tired of the court thing, tired of being [taken] to court over sexual harassment." (Doc. 17, Ex. 10 at 53.) Evans denies making this statement. (Doc. 17, Ex. 6 at 72-73).

The Eleventh Circuit has held that "[d]irect evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption," and it "is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999); *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001) ("Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."); *Damon v. Fleming Supermarkets of Fl., Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999) (same); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729-30 (11th Cir. 1999) (same). To constitute direct evidence, the statement at issue must be that of a decision-maker to the challenged decision. *Bass v. Bd. of Co. Comm'rs. Orange Co., Fl.*, 256 F.3d 1096, 1105 (11th Cir. 2001); *Trotter v. Bd. of Trustees Univ. Ala.*, 91 F.3d 1449, 1453-54 (11th Cir. 1996) *citing Price Waterhouse v. Hopkins*,

490 U.S. 228, 244-45 (1989) (O'Connor, J., concurring) ("Thus stray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers . . . ."), *see also Id.* at 251 (plurality opinion of Brennan, J.) (plaintiff must show remarks played a part in the particular hiring decision); *Standard v. A.B.E.L. Serv. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

The court finds Evans's statements are inadmissible. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453 (11th Cir. 1997).[2] The Eleventh Circuit has held statements made by a non-decision maker are not admissible as admissions by a party opponent. The alleged statements made by Evans are hearsay and not admissible.

Second, even if admissible, these two statements do not constitute direct evidence of a retaliatory purpose by Southern Energy. "For statements of discriminatory intent to constitute direct evidence of discrimination, ***they must be made by a person involved in the challenged decision***. Remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not

---

[2]In *Zaben*, two former employees, Zaben and Lewis, sued claiming they were included as part of a reduction in force due to their age. Lewis claimed two supervisors at the plant told him "'they [meaning higher officials at the company] was [sic] talking about getting rid of the older employees,' and that 'they wanted younger employees to train them the way they wanted them.'" 129 F.3d at 1455. The district court found the statements were inadmissible hearsay because there was no evidence the supervisors making the comments were decision-makers in the reduction in force process, and the statements were potentially double hearsay "because the declarants seemed to be repeating what other, unidentified, declarants had told them." *Id.* The Eleventh Circuit agreed, stating:

> Lewis' testimony concerning what Carter and Dunning said to him about what others in the company told them presents a classic 'double hearsay' problem. Under the federal rules, 'hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.' Fed. R. Evid. 805; *see U.S. v. Pendas-Martinez*, 845 F.2d 938, 942-43 (11th Cir. 1988) (both levels of hearsay must be excepted from the hearsay rule). . . . If . . . [the alleged declarants] had been deposed – or had furnished sworn affidavits – and had testified with respect to age-biased statements made by specifically identified, senior managers at the plant, their statements . . . might have been relevant and, therefore, permissible. Lewis did not offer such testimony. Rather, as in [two other circuit court cases], Lewis sought to have the district count (sic) consider statements made to him by Carter and Dunning that 'they,' meaning other unidentified declarants, wanted to get rid of their older workers. Such testimony is hearsay and was properly excluded by the district court.

*Id.* at 1456-57.

direct evidence of discrimination." *Bass*, 256 F.3d at 1105 (internal quotations and citations omitted). Any statement by Evans, who was not a decisionmaker, is not direct evidence of the decisionmaker's motive. Therefore, this evidence is not direct evidence of retaliation.

### B. Circumstantial Evidence

Plaintiff contends she can establish that defendant retaliated against her for engaging in protected activity by circumstantial evidence. When a plaintiff chooses to establish retaliation by circumstantial evidence, the court employs the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[3] Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. *See Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *See McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that defendant's articulated reasons are a mere pretext for unlawful retaliation. *See Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated

---

[3]"[T]he same analytical framework applies to retaliation claims as applies to other employment discrimination claims, including the availability of the *McDonnell Douglas* presumption." *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999)(citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

reasons are unworthy of credence, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

### 1. Prima Facie Case

To establish a prima facie case of retaliation under Title VII, plaintiff must establish that (1) she engaged in statutorily-protected activity, (2) she suffered a subsequent adverse employment action, and (3) there is a causal link between the two. *Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999). "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated. In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)(internal citations and quotations omitted).

The facts demonstrate that plaintiff engaged in protected activity when she filed her lawsuit against defendant in May of 1999, alleging that she had been sexually harassed. Also, plaintiff has established she was subjected to adverse employment action when she was laid off by defendant. Plaintiff has not demonstrated that Green knew of plaintiff's protected activity at the time he decided to terminate her. Therefore, the court finds that plaintiff cannot establish a causal link between her lawsuit and her layoff. *See Brungart*, 231 F.3d at 799.

Also, the court notes that the length of time between the protected activity and the adverse action is too great to allow an inference of a causal connection based upon a close temporal proximity. "While a close temporal proximity between two events may support a finding of a causal connection between those two events," a time period of several months, "standing alone," is

"insufficient to justify an inference of causation." *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. (citing, *inter alia, Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997), internal citations omitted).

Because plaintiff has failed to establish a causal connection between her protected activity and her layoff, the court finds that she did not establish a prima facie case of retaliation. Therefore, defendant's Motion for Summary Judgment is due to be granted, and plaintiff's claim is due to be dismissed.

### 2. Pretext

Assuming plaintiff can establish a prima facie case of retaliation, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination: As a result of economic conditions defendant decided to reduce its workforce and plaintiff was terminated and other employees were retained based on their relative qualifications. Green selected two other employees over the plaintiff for retention because he felt they were better qualified. Therefore, to survive summary judgment, the plaintiff must put forth evidence on which a reasonable jury could find defendant's articulated reasons are a pretext for unlawful retaliation. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001); *Olmstead*, 141 F.3d at 1460; *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Plaintiff may establish that an articulated reason is a pretext for retaliation "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989). If a plaintiff chooses to establish pretext by showing that her employer's proffered reason is unworthy of credence, she must attack that reason "head on

and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). The plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). Moreover, a plaintiff cannot prove pretext simply by quarreling with the wisdom of her employer's decision. *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43).

The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002). "When evaluating a charge of [retaliation], . . . [the court] must focus on the ***actual knowledge*** and ***actions*** of the ***decision-maker***." *Id.* at 1274 (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001) and citing *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir.2001))(emphasis added).

Plaintiff alleges she was a better employee than Ponder and Abbott. Plaintiff's opinion that she is the better employee is not sufficient evidence to raise a genuine issue of fact regarding whether Green's articulated reasons for preferring Ponder and Abbott are unworthy of credence. *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000). "The relevant inquiry for us . . . is not to judge which employee was more qualified, but to determine whether any disparity between [the] qualifications [of plaintiff, Abbott and Ponder] is so great that a reasonable fact-finder

could infer that [Green] did not believe [Abbott and Ponder] to be better qualified." *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).

Based upon Green's observations and beliefs, as well as attendance reports, Green chose to retain Ponder and Abbott over plaintiff. In making his consolidation decisions, Green considered the workers' skills, job performance, versatility, and attendance. In Green's opinion, Ponder was not only qualified to perform her final cleaner duties, but was experienced at molding, and most, if not all, of the positions in the final finish department. Ponder also received several accolades while at Southern Energy, including awards voted on by her peers and management, and a promotion offer. In addition, Ponder was absent from work only one day a year, for an annual check-up, which is better than plaintiff's attendance record.

Green also decided to retain Abbott because he believed she was a better employee than plaintiff. In making his decision Green considered the attendance and performance records of Abbott and plaintiff. While both were good performers, Green felt Abbott's performance was better than plaintiff's performance. Green testified that, at times, he had to go behind plaintiff to redo some of her cleaning work, but he did not have to do that with Abbott. Green also felt Abbott was a quicker, more efficient worker.[4] He also found Abbott's attendance was better than plaintiff's attendance. In the preceding year, plaintiff had four and one-half absences and four tardies, while Abbot only had one absence and one tardy.

---

[4] Green testified: "[Abbott] was there every day on time and she done her job. I didn't have to go back and check on her job. I didn't have to – if I asked her to go do something, it was done. She didn't waste much time, I guess, what you'd say. And she tried to get her job done on time, on roll time every time. She didn't – there wasn't an excuse or anything or that a reason why she couldn't get it done, she'd give me a hundred percent to get her job done. And her absentees was outstanding. In my opinion, she was just, she was a better performer when it come down to the job." (Doc. 17, Ex. 3 at 114.)

Plaintiff also offered evidence of the opinion of a co-employee, Milton Swafford, that she was a better employee than Abbott or Ponder. However, evidence that someone other than a decisionmaker thought plaintiff should have been terminated does not rebut – head-on– the fact that Green preferred Abbott and Ponder. *See Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp.2d 1180, 1188 (N.D. Ala. 2002).

Because plaintiff has not offered evidence on which a reasonable jury could find that defendant's non-retaliatory reasons for the layoff of plaintiff were pretext for unlawful retaliation, defendant is entitled to judgment as a matter of law.

V. **CONCLUSION**

For the reasons stated herein defendant's Motion for Summary Judgment will be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 26th day of September, 2003.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge